JOHN M. RUNFOLA, SBN 096058
KAREN MCCONVILLE, SBN 269234
Pier 9, Suite 100
San Francisco, California 94104
Telephone:     (415) 391-4243
Facsimile:     (415) 391-5161

Attorney for
DEMARIO MCDANIELS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEMARIO MCDANIELS,<br><br>Defendant. | Case No. 10-0680-WHA<br><br>**DEFENDANT DEMARIO MCDANIELS SENTENCING MEMORANDUM**<br><br>Date: April 5, 2011<br>Time: 2:00pm |

**INTRODUCTION**

On September 16, 2010 a federal grand jury returned a four count indictment charging defendant, Demario McDaniels with three counts of distribution and possession of cocaine base in the form of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841 (a) (1) and (b) (1) (B) (iii); and one count of possession with the intent to distribute cocaine base in the form of crack cocaine, in violation of 21 U.S.C. §841 (a) (1) and (b) (1) (c).

On January 4, 2011, Mr. McDaniels pleaded guilty pursuant to a written plea agreement to count three under Federal Rule of Criminal Procedure 11(c)(1)(C). The Court ordered the United States Probation Office (USPO) to prepare a presentence investigation report (PSR). Judgment

and sentencing is currently set for April 5, 2011, at 2:00pm.

At that time Mr. McDaniels will ask the Court for a sentence of 120 months, in that this sentence is the only one that is sufficient, but not greater than necessary to comply with the factors specified in 18 U.S.C. § 3553 (a).

Mr. McDaniels requests that the Court consider:

1) His childhood and family history;

2) His substance abuse problems since age of 12;

3) Lack of youthful guidance;

## PRESENT OFFENSE

On January 12, 2010, a confidential informant (CI) made a recorded telephone call to Mr. McDaniels to arrange the purchase of crack cocaine. On that date an undercover ATF agent and the CI met with Mr. McDaniels at the intersection of Sacramento and Drumm Street in San Francisco. There undercover agent discussed the possibility of purchasing a firearm from Mr. McDaniels. Mr. McDaniels did not pursue this request to locate a firearm. The undercover agent then purchased 13.4 grams of crack cocaine from Mr. McDaniels for $400.

On July 22, 2010, during another recorded call, the CI spoke with Mr. McDaniels and arranged to purchase two ounces of crack cocaine and a firearm. When they spoke again later that day, Mr. McDaniels indicated that he had a firearm. This indication was a mere bluff by Mr. McDaniels as he was afraid and distrusted the CI and undercover agent. No weapons were ever found on Mr. McDaniels prior to or after his arrest on the present offense. The CI and undercover agent met with Mr. McDaniels at the intersection of 7th Street and Center Street in Oakland. The undercover agent purchased 49.2 grams of crack cocaine for $1,400.

On August 24, 2010, the undercover agent contacted Mr. McDaniels to purchase a further two ounces of crack cocaine. They met at the intersection of 7th Street and Center Street, Oakland.

Mr. McDaniels entered the agent's vehicle and told him the price for the two ounces would be $1,500 and instructed him to follow him to another location. The undercover agent followed him to an apartment building at 1801 14th Street in Oakland. Mr. McDaniels had the agent wait for approximately 12 minutes before returning and making the exchange of 54.4 grams of crack cocaine.

On September 7, 2010, the ATF obtained a federal arrest and search warrant for Mr. McDaniels. That same day the undercover agent contacted Mr. McDaniels to purchase two ounces of crack cocaine and a firearm. On September 8, 2010, Mr. McDaniels met with the undercover agent at 1801 14 Street, in Oakland. Mr. McDaniels did not have the requested two ounces of crack cocaine for the agent and no drugs were exchanged. Mr. McDaniels was arrested without incident. A search of Mr. McDaniels vehicle produced 13.4 grams of crack cocaine and 3.9 grams of marijuana.

## PROBATION REPORT AND RECOMMENDATION

Probation Officer Karen L. Mar prepared a Pre-Sentence Report (PSR). Mr. McDaniels and his counsel have reviewed that PSR and have no objections to its content, only to the imprisonment recommendation of 188 months.

Ms. Mar's recommendation does not acknowledge that Mr. McDaniels is an untreated 24 year old addict. It does not address his problems of growing up in a home of substance abuse or his lack of a home and the absence of both his parents from the age of 11.

It fails to acknowledge that there were never any weapons involved in the present offense, despite the undercover agent probing Mr. McDaniels no less than **5 times** to obtain a weapon for him. No serious violence was involved and Ms. Mar ignores relevant §3553 (a) factors that would warrant a downward departure from the applicable guideline range. A sentence of 188 months is much more than necessary to adequately serve the sentencing purposes the Court must consider

under Title 18 U.S.C §3553 (a).

## MR. MCDANIELS BACKGROUND

Demario Deshawn McDaniels was born on February 28, 1987, in Oakland, to Donald McDaniels and Annette Bunton. His father, age 53, resides in Antioch, Oakland, and is a recovering heroin addict. His mother, age 52, resides in Oakland, California, and has been disabled since Mr. McDaniels was 11 due to a brain aneurysm and a stroke.

Mr. McDaniels is the only child born to his parent's non-marital union. He grew up mostly in a single parent home with his mother. His father was constantly in and out of jail on drug related charges. His father was addicted to heroin and would inject heroin in front of him on a regular basis.

His mother worked at an Army base warehouse in order to provide for him. His father would often argue with his mother when she spent money on him as he wanted it for drugs. He would witness his father verbally abuse his mother and he would hit her with his hand, choke and punch her. Mr. McDaniels would try to stop his father from fighting with his mother by crying or putting himself between them.

Due to the violence between his father and his mother, Mr. McDaniels would often hide in his room. He would hide this to stay out of his father's way particularly when he was experiencing withdrawal symptoms as his father would often become aggressive with him.

When Mr. McDaniels was 11 years old his mother suffered a brain aneurysm and was hospitalized. His mother was unable to speak for some time and he was only taken to see her once or twice a month. His father had already left the family home by this stage. Mr. McDaniels has had minimal contact with him since. He blames his father for causing his mother's illness. Mr. McDaniels resided with his maternal aunt, Doreen Bunton, during this period in the 18th Street

projects in Oakland, California.

Doreen Bunton, resided with her two children, her boyfriend and her youngest sister, who was addicted to crack cocaine in the 18th Street project. Mr. McDaniels had had little or no contact with his aunt prior to being forced to live with her. He did not have a bedroom in this home and would sleep in the living room. His aunt was mostly absent as she used marijuana and alcohol regularly within the 18th Street project. He felt like an unwanted 'stepchild' and was never given any attention. He was often teased by his aunt's two children for "feeding off their family" and was mocked because his father was an addict and didn't care about him.

Therefore, at the age of 13, Mr. McDaniels "turned to the streets" for attention and began socializing with older males. He looked up to the older males on the streets for guidance. This is when he started 'smoking' weed. He was sleeping in cars or dealer's homes because his aunt would lock him out of her house in the 18th Street project if he had not returned home by 10:30pm. Mr. McDaniels spent time in Juvenile Hall as a result. He recalls liking Juvenile Hall as he was fed, clothed and received attention.

After being sent to a rehabilitation camp at the age of 15, Mr. McDaniels went back to live with his mother for a few months. He did not spend as much time on the streets during this period and had curbed his drug habit. However, his mother suffered another stroke and he was back on the streets again.

From the age of 11 to 17, Mr. McDaniels was involved in a relationship with Mingon Perry, who is currently 24 years old, and resides in Oakland. The couple has a six year-old son, Demario Deshawn McDaniel's, Jr., who resides with his mother. Mr. McDaniels has always tried to provide for his son and be in his life as much as possible.

For the past five years, Mr. McDaniels has been in a relationship with Akilah Steel, age 24. Ms. Steel resides in Oakland and is employed as an in-home health care provider for her

mother. She has three children from a previous relationship; the father of whom is now deceased.

Upon his release from custody, Mr. McDaniels plans to stay drug free, enroll in school and learn a trade from which he can gain permanent employment. He would like to obtain his own residence so that he might gain full custody of his son. He wishes to provide and care for his son in order that he not end up on the streets like him with a drug abuse problem. Mr. McDaniels mother stated that she will continue to support her son and be there for him when he is released.

## MR. MCDANIELS WORK HISTORY

Mr. McDaniels has some training and skills as a construction worker which he gained through Volunteers of America prior to his arrest. From March 2010 to September 8, 2010, Mr. McDaniels was employed as a construction worker and laborer through Volunteers of America in Alameda, California. He obtained this job through his own efforts in the hope that he would not have to sell drugs to support himself and his son. Unfortunately, his drug habit far exceeded his income. Mr. McDaniels earned $16 per hour through his employment as a contract employee with the City of Oakland prior to his arrest.

From November 16, 2006 to March 15, 2007, Mr. McDaniels was employed as a transitional dock worker with Goodwill Industries in San Francisco, California, earning $9.14 per hour. He obtained this position through the Kamala Harris 'back on track program'. He was forced to resign when he was arrested on a charge of having in his possession valium pills for which he did not have a prescription.

When Mr. McDaniel was 18, he worked in a warehouse for six months through Acrotek, a temporary employment agency, in Alameda, California, earning $8.75 per hour. His employment was terminated due to poor work performance. Mr. McDaniels recognized then that he had a severe drug abuse problem as he was not able to functioning properly on a daily basis and tried to reduce his drug consumption alone.

## MR. MCDANIELS SUBSTANCE ABUSE

At the young age of 12, Mr. McDaniels began smoking three to four marijuana 'blunts' daily. His use increased every year until he used more than an eighth of an ounce, every other day. He would sometimes add crack cocaine to these 'blunts'. He admits that when he was 18 years old, he began ingesting one-half to one gram of cocaine on a daily basis. At the age of 20, he began consuming four ounce bottles of prescription cough syrup with codeine, with either two valium or two or three Vicodin pills crushed in on a daily basis. His drug use would on average cost him $100-150 per day. *His drug use continued until his arrest for the instant offense.*

Mr. McDaniels also drank alcohol. When he was aged 14 he began consuming half a pint of Hennessey Cognac on a daily basis. His alcohol abuse decreased when he was 16 as drugs took over and he would only consume alcohol on the weekends. By the time he was 18, he was only consuming alcohol on special occasions or when out with friends.

Mr. McDaniels was sent to Camp Sweeney when he was 15 to engage in a rehabilitation program, at the time he did not believe he had a problem with drugs. He only realized he had a problem when he was 18 years old because he was unable to cease his drug use even though he knew his freedom was in jeopardy. Mr. McDaniels has tried to stop his use on his own on more than 10 occasions, but has been unsuccessful each time.

Mr. McDaniels admits that cocaine has caused him the most problems. While he participated in a drug treatment program when he was **15** he has **not participated in a proper drug treatment program since,** he is now interested in doing so.

## MR. MCDANIELS CRIMINAL HISTORY

Mr. McDaniels has two prior misdemeanor convictions and five drug related felony convictions. These prior convictions constitute the basis for his 'Career Offender' status under the guidelines.

DEFENDANT DEMARIO MCDANIELS
SENTENCING MEMORANDUM
03/23/11                                                        -7-

On July 1, 2005, **at age 18**, Mr. McDaniels was arrested for attempted vehicle theft, a misdemeanor. He was sentenced to 90 days jail and three years' probation. On December 10, 2005, **at age 18**, Mr. McDaniels was arrested for vehicle theft, a misdemeanor. He was high on cocaine at the time. He came across a car with the keys in the ignition. He did not own a car at the time and so took the car and began driving around as if it was his own before being arrested. He was sentenced to 21 days jail and 36 months' probation.

Mr. McDaniels prior felony convictions are all drug related. On January 5, 2006, **at age 18,** he was arrested for possession of a controlled substance. He was arrested in front of 2113 Myrtle Avenue in Oakland after a search produced a baggie containing suspected marijuana and $183 in small denominations. He was sentenced to 30 days jails and 36 months' probation. On May 21, 2006, **at age 19,** Mr. McDaniels was arrested for possession of Cocaine base for sale. He was initially sentenced to 38 days jail and three years' probation.

On February 9, 2007, **at age 19,** Mr. McDaniels was arrested for possession of a controlled substance for sale. Oakland police officers on routine patrol approached Mr. McDaniels and three other black males. He spontaneously stated that he had some valium pills in his pocket. He did not have a prescription for the pills. He was sentenced to 9 months jail and five years' probation as a result. On August 7, 2007, **at age 20,** Mr. McDaniels was arrested for possession of cocaine base for sale. He was in violation of a stay away order for 150 yards from Ellis and Leavenworth Streets. He was arrested and a search of his person produced two hand rolled cigarettes containing suspected marijuana, a plastic bag containing off white rocks and crumbs of suspected cocaine base and $178 in small denominations. He was sentenced to 38 days jail and three years' probation.

On October 23, 2008, **at age 21**, Mr. McDaniels was arrested for possession of a controlled substance for sale. Officers were attempting a traffic enforcement stop when Mr.

McDaniels fled. A search produced a plastic baggie containing a quarter ounce of marijuana, 45 rocks of cocaine and $1,467 in various denominations. He was sentenced to two years prison.

## APPLICABLE SENTENCING LAW

The landmark decision in *United States v. Booker*, 160 L. Ed. 2d 621, 125 S.Ct. 738 (2005), changed sentencing in the Federal Courts. *Booker* renders the Guidelines as advisory only, and instructs the sentencing courts to consider the Guidelines in context of all of those factors enumerated in Title 18 U.S.C. section 3553(a). The Court found that the mandatory application of the Guidelines was unconstitutional. In the *Booker* Remedy Opinion, the Court stated:

> "We answer the question of remedy by finding the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C.A. 3553(b)(1) (Supp. 2004), incompatible with today's constitutional holding. We conclude that this provision must be severed and excised, as must one other statutory section, 3742(e) (main ed. And Supp. 2004), which depends upon the Guidelines mandatory nature. So modified, the Federal Sentencing Act, See Sentencing Reform Act of 1984, as amended, 18 U.S.C. 3551 *et seq*., 28 U.S.C. 991 *et seq*., makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. 3553(a)(4) (Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see 3553(a) (Supp. 2004)." At 651.

Further, with respect to appellate review of sentencing decisions, the Court stated:

> "We infer appropriate review standards from related statutory language, the structure of the statute, and the 'sound administration of justice.' And in this instance those factors, in addition to the past two decades of appellate practice in cases involving departures, imply a practical standard of review already familiar to appellate courts: review for 'unreasonableness.'"
>
> . . . Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." ***Booker***, at 660-661.

The Supreme Court addressed the issue of the "presumption of reasonableness" of a within Guidelines sentence in *Rita v. United States*, 127 U.S. 2456 (2007) and instructed that a within Guideline sentence is presumed reasonable only upon appellate review. The

DEFENDANT DEMARIO MCDANIELS
SENTENCING MEMORANDUM
03/23/11                              -9-

Court stated:

> "We repeat that the presumption before us is an *appellate* court presumption. Given our explanation in *Booker* that appellate "reasonableness" review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review. The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. *18 U.S.C. § 3552(a); Fed. Rule Crim. Proc. 32.* He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines, to apply, *USSG § 5K2.0*, perhaps because the Guidelines sentence itself fails properly to reflect *§ 3553(a)* considerations, or perhaps because the case warrants a different sentence regardless. See *Rule 32(f)*. Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. See *Rules 129, 136, 111 S. Ct. 2182, 115 L.Ed. 2d 123 (1991)* (recognizing importance of notice and meaningful opportunity to be heard at sentencing). In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Booker, 543 U.S. at 259-260, 125 S.Ct. 738, 160 L. Ed. 2d 621*." at 214.

Further, the Court instructed:

> "The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness. Even the Government concedes that the appellate courts may not presume that every variance from the advisory Guidelines is unreasonable." at 216.

In *Nelson v. United States*, 129 S. Ct. 890, 892 (2009), perhaps as a reminder and definitely for emphasis, the court stated:

> "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."

Indeed, in *Irizarry v. United States*, 128 S.Ct. 2198, 2202 (2008), the Court ruled that a variance from the sentencing Guideline range did not even require notice to the parties.

The Ninth Circuit was heard on the presumption of reasonableness and directed that even on appeal the presumption of a Guideline sentence may not be reasonable. It

stated:

> ". . . A court of appeals may *not* presume that a non-Guidelines sentence is *un*reasonable. Although a court may presume on appeal that a sentence within the Guidelines range is reasonable, *id*, we decline to adopt such a presumption in this circuit." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008).

The Guideline range is simply the beginning of the analysis for sentencing, not the end. The Ninth Circuit stated:

> "'The Guideline's factor may not be given more or less weight than any other.' So while the Guidelines are the 'starting point and initial benchmark' and must 'be kept in mind throughout the sentencing process,' the Guideline's range constitutes only a touch-stone in the district court's sentencing consideration." *United States v. Autery*, 555 F.3d 864, 8l72 (9th Cir. 2009)

The Supreme Court has now articulated the process by which sentencing and appellate courts must implement the findings in *Booker*, including the admonition of *Rita*. The court has directed:

> "As we explained in *Rita*, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. . . . He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.
>
> . . . Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into

    account the totality of the circumstances, including the extent of any
variance from the Guidelines range. If the sentence is within the Guidelines
range, the appellate court may, but is not required to, apply a presumption
of reasonableness. . . . But if the sentence is outside the Guidelines range,
the court may not apply a presumption of unreasonableness. It may consider
the extent of the deviation, but must give due deference to the district
court's decision that the §3553(a) factors, on a whole, justify the extent of
the variance. The fact that the appellate court might reasonably have
concluded that a different sentence was appropriate is insufficient to justify
reversal of the district court." *Gall v. United States*, 128 S.Ct. 586, 596-597,
169 L. Ed. 2d 445 (2007) (citations and footnotes omitted).

  Before *Gall* and *Rita*, the 9th Circuit anticipated their instructions. It directed the sentencing court to accurately calculate the Guidelines, it may then determine if there are any justifiable departures from the Guidelines, and then consider the Guidelines as but one factor among all of the factors outlined in Title 18 USC 3553(a), to reach a reasonable sentence. *United States v. Menyweather*, 431 F.3d 692, 696 (9th Cir. 2005), reprinted as amended at 447 F.3d 625, 630 (9th Cir. 2006). See, also, *Carty*, *id* at 991-994. A formal determination of "departures," as required under a mandatory guideline system, may be both redundant or unnecessary, under a unitary determination of reasonableness of a sentence. A determination of an allowable departure under the pre-*Booker* regime, however, may inform the court of the reasonableness of a sentence. *United States v. Mohamed*, 459 F.3d 979, 986-87 (9th Cir. 2006).

  The Court must now consider 18 USC 3553(a) in its entirety and impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The court, in determining the particular sentence to be imposed, shall consider –

  (1) The nature and circumstances of the offense and the history and

  characteristics of the defendant;

  (2) The need for the sentence imposed --

       (a) to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense;

       (b) to afford adequate deterrence to criminal conduct;

       (c) to protect the public from further crimes of the defendant; and

       (d) to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner;

    The sentencing court is now required to consider factors that the Guidelines effectively prohibited from consideration (ie: Age, USSG 5H1.1; Education and Vocational Skills, USSG 5H1.2; Mental and Emotional Condition, USSG 5H1.3; Physical Condition Including Drug or Alcohol Dependence, USSG 5H1.4; Employment, USSG 5H1.5; Family Ties and Responsibilities, USSG 5H1.6; Socio-economic Status, USSG 5H1.10; Civic and Military Contributions, USSG 5H1.11; and Lack of Youthful Guidance, USSG 5H1.12.). *United States v. Ameline*, 409 F.3d 1073, 1093 (9th Cir. 2005) (*en banc*). To consider the "history and characteristics of the defendant," the Court must now consider factors the Guidelines eschewed.

    Finally, the Supreme Court has cautioned that respect for the law is promoted in many ways, not always measured by the strictness of sentences or the nature of harsh sanctions. The Court stated:

> ". . . Moreover, the unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, *id.*, at 599.

    In order to meet the mandate of the *Booker* remedy, then, this court must calculate the appropriate guidelines range and may consider appropriate departures. It must also

DEFENDANT DEMARIO MCDANIELS
SENTENCING MEMORANDUM
03/23/11                            -13-

apply the 3553(a) factors and address any other specific characteristics of the defendant or his offense that might impact the determination of a "reasonable" sentence under the particular circumstances of this case. The Court must then consider the statutory parsimony provision and impose a sentence **"sufficient, but not greater than necessary to comply with the purposes set forth in [§3553(a)(2).")** The district Court's sentencing decision will then be subject to an abuse-of-discretion review by the circuit.

## SENTENCING CONSIDERATIONS

Mr. McDaniels requests that the Court determine a reasonable sentence in this case to be 120 months based upon:

1) Mr. McDaniels lack of youthful guidance from the young age of 11;

2) Mr. McDaniels untreated drug addiction from which he suffered his entire life and has never been treated for;

3) Mr. McDaniels childhood fraught with absent parents and a family with severe substance abuse problems.

## LACK OF YOUTHFUL GUIDANCE

The Supreme Court's decision in *Booker* restored to this Court its ability to exercise some compassion where it is clear that a childhood fraught with inadequate parenting has contributed to a defendant's illegal conduct and his becoming a drug addict. Mr. McDaniels prior convictions dramatically increase his guideline range of imprisonment from 108-135 months to 188-235 months for the present offense.

Mr. McDaniels prior convictions occurred when he was between the ages of 18 and 21 years old. Mr. McDaniels started using narcotics when he was 12 years old. His drug addiction has remained throughout his life and Mr. McDaniels admitted took over his life to the point that he began selling narcotics in order to support his habit. He was also born into a area which made

DEFENDANT DEMARIO MCDANIELS
SENTENCING MEMORANDUM
03/23/11                                           -14-

it increasingly difficult for him to avoid the drug culture.

Furthermore, the lack of guidance early on in his life and the instability throughout, living with his aunt in the 18th Street projects has affected Mr. McDaniels life. His father's heroin addiction, his aunt's abuse of drugs and her daughter's addiction to crack cocaine have made it difficult for him to lead a law abiding life. Mr. McDaniels was in the presence of a drug addict from birth, his father, and unfortunately became an addict himself after his father left.

Mr. McDaniels was, in effect, homeless and without either of his parents from the age of 11. His aunt did not have a room for him. He felt unwanted and a burden in her home. All of these factors combined, forced Mr. McDaniels out of the housing projects and onto the streets of Oakland where he developed a drug habit. He eventually began to sell drugs in order to support himself and his ever worsening drug habit. Mr. McDaniels admits that the time he served for his prior convictions did not deter him from using and selling drugs again because he never received proper treatment for his addictions during any of his sentences as an adult. He believes that if given proper treatment he could live a law abiding life in the future.

While Mr. McDaniels does not assert that his childhood is an excuse for his criminal conduct, however, it has contributed to his behavior and should be considered by the Court in fashioning an appropriate and reasonable sentence.

**REASONABLE SENTENCE**

The Court is charged with imposing a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection [3553(a)]." A sentence within the Career Offender Guideline range far and away exceeds that which is "sufficient." Mr. McDaniels comes before the Court requesting a sentence between the non-Career Offender Guideline and the Career Offender Guideline, a sentence of 120 months.

DEFENDANT DEMARIO MCDANIELS
SENTENCING MEMORANDUM
03/23/11                                    -15-

At age 24, a ten year sentence is extraordinarily long and will adequately punish Mr. McDaniels and serve as a deterrent to others. A sentence of ten years will not diminish the seriousness of Mr. McDaniels conduct in this offense or his prior record. A ten year sentence is a very long time for such a young man.

Further, it is evident that Mr. McDaniels use of controlled substances has undoubtedly contributed to his involvement in the drug sub-culture, leading to his involvement in the present offense. Therefore, it is reasonable that the Court recommend to the Bureau of Prisons that Mr. McDaniels participate in the BOP's Residential Drug Program and recommend that the BOP designates Mr. McDaniels to an institution where he can participate in that program.

DATED: March 25, 2011

Respectfully submitted,

LAW OFFICES OF JOHN M. RUNFOLA,

By: _____
JOHN M. RUNFOLA
KAREN MCCONVILLE
Attorneys for Defendant
Demario McDaniels

DEFENDANT DEMARIO MCDANIELS
SENTENCING MEMORANDUM
03/23/11                              -16-

At age 24, a ten year sentence is extraordinarily long and will adequately punish Mr. McDaniels and serve as a deterrent to others. A sentence of ten years will not diminish the seriousness of Mr. McDaniels conduct in this offense or his prior record. A ten year sentence is a very long time for such a young man.

Further, it is evident that Mr. McDaniels use of controlled substances has undoubtedly contributed to his involvement in the drug sub-culture, leading to his involvement in the present offense. Therefore, it is reasonable that the Court recommend to the Bureau of Prisons that Mr. McDaniels participate in the BOP's Residential Drug Program and recommend that the BOP designates Mr. McDaniels to an institution where he can participate in that program.

DATED: March 25, 2011

Respectfully submitted,

LAW OFFICES OF JOHN M. RUNFOLA,

By: _____
JOHN M. RUNFOLA
KAREN MCCONVILLE
Attorneys for Defendant
Demario McDaniels

DEFENDANT DEMARIO MCDANIELS
SENTENCING MEMORANDUM
03/23/11                              -16-